IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**DEAN C. KIENHOLZ**,                                    Civil Case No. 08-40-KI

                    Petitioner,

                                         OPINION AND ORDER

   vs.

**MARK NOOTH**,

                    Respondent.


          Harold DuCloux III
          Assistant Federal Public Defender
          101 SW Main Street, Suite 1700
          Portland, Oregon  97204

                Attorney for Petitioner

          Hardy Myers
          Attorney General

Page 1 - OPINION AND ORDER

Summer R. Gleason
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon  97301-4096

       Attorneys for Respondent

KING, Judge:

Petitioner Dean Kienholz brings this action, pursuant to 28 U.S.C. § 2254, seeking a writ of habeas corpus.  For the reasons set forth below, I deny the petition.

## FACTS

Petitioner, operating his van while intoxicated, traveled the wrong direction on a one-way street at a high rate of speed and hit a car carrying four college students.  The passenger riding in petitioner's car was injured, one individual in the other car was killed and the three others were injured.

Petitioner was charged with Manslaughter in the First Degree, three counts of Assault in the Second Degree, one count of Assault in the Third Degree, Driving Under the Influence of Intoxicants, two counts of Reckless Driving, and one count of Recklessly Endangering Another Person.

Petitioner entered not guilty pleas to all the charges and obtained counsel.  Petitioner filed a motion to suppress statements he made while he was in the hospital immediately after the accident, and the court denied the motion.  Petitioner subsequently waived a jury trial.  Petitioner stipulated to several facts; the only issue at trial was whether petitioner had acted with extreme

Page 2 - OPINION AND ORDER

indifference to the value of human life, thereby constituting Manslaughter in the First Degree. After the bench trial, the court convicted him on all counts.

The court imposed a partially concurrent sentence totaling 301 months.

After his conviction, petitioner appealed the judgment.  The Oregon Court of Appeals affirmed both the conviction and the sentence in State v. Kienholz, 183 Or. App. 535, 53 P.3d 471 (2002), and the Oregon Supreme Court denied review, 335 Or. 196, 64 P.3d 577 (2003).

Petitioner filed a Petition for Post-Conviction Relief.  The Malheur County Circuit Court (the "PCR court") denied the petition on November 30, 2004.  The Oregon Court of Appeals affirmed without opinion, Kienholz v. Hill, 215 Or. App. 112, 168 P.3d 338 (2007), and the Oregon Supreme Court denied review, 343 Or. 554, 173 P.3d 831 (2007).

Petitioner filed this federal habeas petition on January 3, 2008.

## DISCUSSION

Petitioner formally asserts two grounds in support of his petition for habeas relief, but his petition actually raises three issues.  First, he asserts as claim 1.1 a constitutional violation he raised in a motion to suppress prior to trial.  He specifically alleges that, "When defendant, in custody, for advisement of Miranda, when officers statement he was 'going to get a search warrant' intended to elicit an incriminating response from defendant, thus constituting impermissible interrogation after defendant had invoked his right to counsel."  Pet. for Writ of Hab. Corpus at 6.  The remainder of his first ground is that his trial counsel was ineffective.  In ground two, he alleges ineffective assistance of appellate counsel.

With respect to the first ground, aside from claim 1.1 quoted above, petitioner alleges trial counsel was ineffective for:  failing to communicate with him (1.2); failing to "properly

advise" petitioner about expressing sorrow to the victim's family (1.3a); failing to discuss

possible plea bargains (1.3b); failing to affidavit Judge Gardner and obtain a new judge (1.4);

failing to investigate the fact that a former District Attorney posed as a minister at the hospital to

obtain a confession (1.5); not adequately presenting the problems petitioner experienced with his

van (1.6a); not adequately presenting petitioner's injuries (1.6b); not obtaining a presentence

report (1.7a); not objecting to consecutive sentences as being in violation of <u>Blakely v.</u>

<u>Washington</u> (1.7b).

Petitioner's second ground is that his appellate counsel failed to timely file a petition for

review.

I.    <u>Defaulted Claims</u>

Most of petitioner's claims in his first ground for relief must be denied for procedural

default.  Petitioner raised all of these claims in his petition for post-conviction relief in the PCR

court, but he failed to raise many of these issues on appeal.  Specifically, petitioner failed to

appeal the PCR court's rulings related to his counsel's failure to:  effectively communicate (1.2);

discuss possible plea bargains (1.3b); affidavit Judge Gardner to obtain a new judge (1.4);

investigate the fact that a former District Attorney posed as a minister at the hospital to obtain a

confession (1.5); adequately present the problems petitioner experienced with his van (1.6a);

adequately present petitioner's injuries (1.6b); obtain a presentence report (1.7a); and object to

consecutive sentences as being in violation of <u>Blakely v. Washington</u> (1.7b).  Similarly,

petitioner also did not appeal the issue of his appellate counsel failing to file a petition for review

(2).

A federal court must dismiss a state prisoner's petition for a writ of habeas corpus unless the state prisoner has exhausted available state remedies on all claims alleged in his petition. 28 U.S.C. § 2254(b); Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 522 (1982). A state prisoner can satisfy the exhaustion requirement by fairly presenting his claims to the highest state court. Picard v. Conner, 404 U.S. 270, 275-76 (1971). To fairly present a constitutional claim in state court, both the facts underlying the claim and the "substance," or legal basis, of the constitutional violation must be presented. Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam).

If petitioner has failed to raise the claim at the state level, and can no longer do so because he is procedurally barred under state law, the claims are procedurally defaulted in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman, 501 U.S. at 730-31. If a state prisoner procedurally defaults on a claim in state court, a federal court will not review the claim unless the state prisoner shows cause for the state procedural default and actual prejudice from it, or that "failure to consider the claims will result in a fundamental miscarriage of justice." Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Murray v. Carrier, 477 U.S. 478, 485 (1986); Coleman, 501 U.S. at 750.

Petitioner does not attempt to defend the state's argument that he has procedurally defaulted these claims. Because petitioner did not present these claims to the highest state court and because he cannot show cause for the default, actual prejudice resulting from it, or a miscarriage of justice, petitioner's request for habeas relief based on ineffective assistance of counsel in ground one as set forth above, as well as in ground two, must be denied.

II.    Remaining Claims

Petitioner has two remaining claims; he claims his trial counsel "failed to properly advise" him before trial about expressing his sorrow to the victim's family (1.3a) and he contends he was in custody and was interrogated after he requested counsel (1.1).

The state responds that petitioner failed to exhaust his ineffective assistance of counsel claim (1.3a) because the claim he brings in his federal petition is not substantially similar to the one he raised in his petition for review before the Oregon Supreme Court. Alternatively, the state asserts that the PCR court's conclusion that trial counsel was effective is entitled to deference because it is not contrary to or an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984).

Similarly, the state argues that the trial court's decision denying petitioner's motion to suppress (1.1) is entitled to deference and is not contrary to, nor an unreasonable application of, clearly established law.

A.    Ineffective Assistance of Counsel: Expressing Sorrow (1.3a)

Petitioner alleges that he wrote a statement expressing sorrow to the family of the woman he had killed. When he showed it to his trial counsel, counsel told him to destroy it. Trial counsel explained in defense of the petition for post-conviction relief that "[t]he statement was an admission of guilt, and the prosecutor would have been quite pleased to receive it." Ex. 118 at 3. He also explained that petitioner wanted to contact the press, but that "petitioner wanted to portray himself as remorseful, but he had not always had that attitude during incarceration. Under the circumstances, I believe a statement to the press would have been insulting to the families of the victims." Id. at 2. Finally, counsel testified that he did not prohibit petitioner

Page 6 - OPINION AND ORDER

from contacting the press, but that he recommended against it as he believed it might interfere with a plea agreement or a verdict of criminally negligent homicide, or that petitioner might make statements that could not be supported at trial.

1.    Whether Petitioner Exhausted the Claim

The state contends that plaintiff's claim in his federal petition is not similar enough to the claim he raised in his petition for review before the Oregon Supreme Court.  In his federal petition, he alleges "[t]rial counsel failed to properly advise petitioner prior to trial including[:] a. Petitioner's desire to express his sorrow to the victim's families [sic].  Petitioner's failure to do so was construed by the Court as another example of petitioner's extreme indifference to the value of human life."  Pet. for Writ of Habeas Corpus at 6.  In contrast, in his petition for review filed with the Oregon Supreme Court, he alleged that his trial counsel was ineffective "for failing to assist petitioner in expressing sorrow to the victim's family[.]"  Ex. 127 at 2.

The state characterizes the arguments petitioner made in his petition for review before the Oregon Supreme Court as a failure to *assist* rather than a failure to *advise*.  The state contends that trial counsel's alleged failure to "properly advise" petitioner is different from trial counsel's alleged failure to assist petitioner in expressing sorrow to the victim's family; the former suggests counsel failed to give advice, or failed to give proper advice, regarding a statement of sorrow, while the latter implies petitioner knew he could make a statement but was unable to do so without his counsel's help.  Additionally, the state asserts petitioner raised this issue before the Oregon Supreme Court contending only that it was relevant to the sentence he received, not to defend the element of extreme indifference to human life required for a Manslaughter in the First Degree conviction.

Page 7 - OPINION AND ORDER

To fairly present a constitutional claim in state court, both the facts underlying the claim and the "substance," or legal basis, of the constitutional violation must be presented. <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982). "Mere similarity" of claims before the state and federal courts is insufficient for exhaustion. <u>Duncan v. Henry</u>, 513 U.S. 364, 366 (1995) (claim for "miscarriage of justice" under the state constitution did not fairly present a federal due process claim to the state court). The state prisoner may reformulate the claims somewhat from those made in state court as long as the substance of the federal claim was first fairly presented to the state court. <u>Miller v. Rowland</u>, 999 F.2d 389, 391 (9th Cir. 1993), <u>cert. denied</u>, 511 U.S. 1008 (1994).

I conclude that the two claims are substantially similar. The fundamental issue is whether counsel was ineffective in advising petitioner that he should not offer a statement of sorrow rather than helping petitioner to craft an appropriate statement. The acts of advising and assisting are intertwined. Indeed, in the Summary of the Argument in his petition for review, petitioner argued,

> In this case, petitioner claimed . . . that his trial counsel failed to advise him properly on petitioner's desire to show sorrow to Zollner's family. . . . Petitioner's complaint is not that counsel should have given the letter to the prosecutor. Rather, the claim is that counsel should have given petitioner advice on the matter beyond the bare instruction to destroy the letter. Counsel could have, for instance, assisted petitioner in preparing a statement that would have shown sorrow without admitting guilt or a culpable mental state.

Ex. 127 at 4.

Additionally, petitioner does not now suggest that his remorse was relevant to his conviction of First Degree Manslaughter, only that it was relevant to the sentence he received, so the state's concern on that basis is resolved.

Page 8 - OPINION AND ORDER

In sum, petitioner preserved this claim of ineffective assistance of counsel.

    2.    Whether the PCR Court Erred in Finding No Ineffective Assistance

The PCR court held as follows:

> The second item was failure to advise prior to trial concerning expression of sorrow.  And trial counsel does indicate that Mr. Kienholz wanted to make a statement, a written statement.  However, it was, as described by his trial counsel, an –not only an expression of – of sorrow, but also an expression of guilt, which I think it's appropriate.  It's certainly a judgement call, an appropriate judgement call to not tender that to the prosecutor prior – particularly prior to trial or prior to conclusion of plea – plea negotiations.  It – had that been offered or tendered, it could've very easily made Mr. Kienholz's case much worse.

Ex. 123 at 15.  The PCR court also noted that petitioner "made a statement of remorse at – at sentencing hearing."  Id. at 18.

A petition for writ of habeas corpus, filed by a state prisoner, shall not be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented[.]"  28 U.S.C. § 2254(d); Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result.  Lockyer v. Andrade, 538 U.S. 63, 73 (2003); Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court unreasonably applies clearly established federal law when it is

correctly identified, but applied in an objectively unreasonable manner to the facts of the case.

Lockyer, 538 U.S. at 75-76; Bell, 535 U.S. at 694.

     To prevail on a claim of ineffective assistance of counsel, petitioner must show both

(1) that the attorney's performance fell below an objective standard of reasonableness; and (2)

that the performance prejudiced the defense. Strickland, 466 U.S. at 687, 688. There is a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance. Id. at 689. To establish the second prong of the Strickland test, the defendant must

show that "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." Id. at 694.

     The PCR court found that counsel's performance was not deficient. Counsel advised

petitioner against making a statement both because it would be deemed an admission of guilt,

while plea negotiations were underway, but also because petitioner had not always had a

remorseful attitude during incarceration. Counsel did not prohibit contact with the press, he just

advised against it, particularly if petitioner made statements that he could not later back up at

trial.

     Furthermore, petitioner fails to show that he was prejudiced by the advice of counsel.

Petitioner suggests that counsel should have told him to save the letter and had him read it at his

sentencing, implying that petitioner did not have the opportunity to explain his behavior or

describe his feelings before he was sentenced. Additionally, petitioner points to statements made

by the prosecutor and the victims regarding petitioner's unwillingness to "take responsibility for

his actions," or for being "conveniently remorseful." Sentencing Tr. vol. VI, 6, 40, June 21,

2000.

Petitioner testified at length before he was sentenced about how sorry he was that he drove drunk.  In any event, the judge focused entirely on the "gravity of the act and the tremendous loss" in imposing sentence.  Id. at 88.  The judge never mentioned petitioner's remorse or lack thereof as a factor in the sentence.  Petitioner, therefore, cannot show that counsel's advice prejudiced him in any way.

As a result, petitioner's claim that his counsel was ineffective for failing to advise him about expressing his sorrow to the victims' families (1.3b) must be denied as the PCR court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law.

B.    Miranda Violation

Petitioner challenges the trial court's ruling on his motion to suppress the statements he made at the hospital.  He asserts that he was in a custody situation and that all statements he made without Miranda warnings must be suppressed, as must all the statements he made after he invoked his right to counsel.

After the accident, petitioner was transported to the hospital for treatment of his broken arm, ankle and collarbone.  Officer David Henslee approached petitioner while he was taped to a stretcher in a partitioned room in the Emergency Department.  Henslee told petitioner that he was trying to account for everyone in the accident and asked petitioner which vehicle he had been in.  Petitioner said he had been in the white mini-van.  Henslee asked petitioner if he was with anyone and petitioner answered that he was with his friend, Jay Dean Steagal.  According to Henslee, petitioner then said, "I don't know who was driving."  Pre-Trial Hr'g Tr. 83, Apr. 13, 2000.  Henslee then asked petitioner to tell him what happened that night.  Petitioner told the

officer that he had been at the Peacock shooting pool.  Petitioner then made several comments, such as, "I was in no condition to be drinking [sic]," "All I know is I left that place, they should have called me a cab," "There is no way in hell I would drive, I would call a cab," and "Is anyone dumb enough to call a cab?"  Id. at 84.  Henslee noted that petitioner "kind of led the conversation."  Id.

Henslee left to interview a witness, then brought the witness into the room to identify petitioner.  Henslee next brought a camera to capture the seatbelt marks on petitioner's chest. After Henslee had taken a few photographs, petitioner asked what he was taking pictures of. Henslee answered that he was taking pictures of the seatbelt marks and the broken collarbone. Petitioner responded by pulling his shirt down and saying something about taking photographs with an attorney.  Henslee stopped taking photographs.

Henslee left the room and obtained a tape recorder, came back to petitioner and told him he was being tape recorded.  Henslee did not ask any questions.  Petitioner said, "That's fine, Dude, all I know is I woke up," and then he rambled incoherently.  Id. at 88.  Petitioner's wife entered the room and petitioner attempted to explain to her what had happened.  He told her he remembered only walking down the street from the Peacock and nothing else.

Henslee then told petitioner that he wanted to speak with him and advised him of his Miranda rights.  Petitioner claimed he did not understand his rights and Henslee gave them again. Petitioner's wife interjected and told petitioner he did not have to answer any questions, and Henslee told her she would have to leave if she was not quiet.  Henslee testified that he wanted to make sure petitioner understood his Miranda rights and petitioner's wife was interfering with that.

Finally, Henslee told petitioner he thought petitioner was being difficult and he would think petitioner was lying if he said he did not understand the rights a third time. At that point, the driver of the other vehicle in the accident began screaming in pain from the other side of the partitioned room. Petitioner said he understood his rights the third time. Henslee explained to petitioner that he had been involved in a fatal motor vehicle accident. When Henslee asked petitioner if he understood, petitioner said, "I heard you." Id. at 95.

Henslee asked petitioner if he would consent to giving a blood and urine sample as the police were getting samples from both drivers. Petitioner said, "No." Id. at 97. Henslee told petitioner it was much easier to do it this way and petitioner said, "My lawyer will answer that." Id. Henslee then told petitioner he was under arrest for DUI and Henslee read petitioner the DMV Implied Consent Form regarding urine and blood samples.[1] Petitioner refused to give samples.

Henslee then told petitioner he was going to apply for a search warrant for his blood, but before he finished the statement petitioner interrupted and said, "Can I ask you a question?" Id. at 98. Henslee told petitioner he could ask anything he wanted to. Petitioner then said, "Dude, honestly, honestly bro, I don't remember getting behind the vehicle." Id. Henslee did not ask any more questions. Petitioner continued to make similar remarks about not remembering

---

[1]Pursuant to ORS 813.100, "Any person who operates a motor vehicle upon premises open to the public or the highways of this state shall be deemed to have given consent, subject to the implied consent law, to a chemical test of the person's breath, or of the person's blood if the person is receiving medical care in a health care facility immediately after a motor vehicle accident, for the purpose of determining the alcoholic content of the person's blood if the person is arrested for driving a motor vehicle while under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance." See also ORS 813.131 (similar law applicable to urine analysis).

driving the van that night, but admitted owning a white van as a part owner.  Henslee then told

petitioner he did not believe petitioner had not been driving.  Petitioner continued to insist he had

not been driving.  Henslee asked if his friend was driving.  Petitioner answered, "I don't see

myself doing that.  As far as I know, Officer, they say I was thrown from the vehicle."  Id. at 101.

Petitioner then suggested that there was no way he could have been thrown from the van if he

had been driving.

      Henslee asked two questions before he concluded his conversation with petitioner.  He

clarified that petitioner was part-owner of the white van and he confirmed that petitioner had

been at the Peacock with another man.  He then said he was not going to ask any questions

because petitioner had asked for a lawyer.  Henslee explained at the suppression hearing that he

had only asked clarifying questions based on what petitioner had voluntarily told him.

      Finally, Henslee approached petitioner, as he was being taken from the trauma room, and

handed him the DMV Implied Consent form.  Henslee did not ask any questions.  Petitioner

started yelling, "I woke up and the van was on fire, I was trapped Dude, I couldn't get out."  Id. at

104.  And then he said, "The seatbelt was stuck."  Id.  As he said that, he reached toward his right

hip and started pulling to demonstrate a stuck seatbelt, thereby indicating to Henslee that he was

in the driver's seat.

      The trial court ruled as follows:

> As noted above the most significant issue concerned what happened after Det.
> Hensley [sic] read the implied consent rights to the defendant.  Before Det.
> Hensley read the implied consent form to the defendant, the defendant invoked his
> right to an attorney, and Detective Hensley stopped questioning the defendant.
> But Det. Hensley had the right (and the duty) to advise the defendant of the
> implied consent rights.  Immediately after Det. Hensley read the implied consent
> rights, the defendant asked Detective Hensley whether he could ask him a

Page 14 - OPINION AND ORDER

question and then launched into several statements about whether he, the defendant, was driving. Then Det. Hensley said, "I think you were driving." Then the defendant made some more statements and Det. Hensley asked some more questions. Although it is a close issue, the court concludes that the defendant initiated further discussions and indicated a general willingness to continue to discuss the facts of the case with the officer and thereby waived his right not to answer further questions without his attorney being present. In addition to the cases cited by counsel, the court relied upon State v. Meade, 146 Or App 202[, 933 P.2d 355] (1996) and State ex rel Juv Dept v. Thai/Schmolling, 138 Or App 354[, 908 P.2d 844] (1995) in deciding this issue.[2]

After the defendant said[,] "My lawyer will answer it," he invoked his right to counsel and Det. Hensley had to stop questioning the defendant. But, that does not mean that the detective had to cease all contact with the defendant. . . . If in the course of these events, the defendant makes volunteered statements, they are admissible. In our case, the officer was entitled to tell the defendant he was under arrest and read him the implied consent form.

. . . .

All of the statements made by the defendant were under the totality of the circumstances voluntary. The officer correctly advised the defendant of his Miranda rights and the defendant understood those rights and chose to talk to the officer up to the point where the defendant told the officer[,] "My lawyer will answer it."

The defendant was not in a custodial interrogation situation until Det. Hensley told the defendant he was under arrest. This occurred immediately after Det. Hensley read the implied consent advice.

Ex. 121.

        1.    <u>Whether Petitioner was in Custody</u>

Petitioner first argues that his statements should have been suppressed because he was in

a custodial situation. He was taped to the bed and could not leave the room while the police

officer brought in witnesses to identify him, photograph him, and tape record him. Henslee

---

[2]Although the trial court cited to two state cases, both state cases quote extensively from Edwards v. Arizona, 451 U.S. 477 (1981) and Oregon v. Bradshaw, 462 U.S. 1039 (1983). See also Ex. 120 (defendant's memorandum in support of motion to suppress).

testified that petitioner would not have been free to leave the hospital if he had tried, even before he was under arrest. Additionally, petitioner contends, Henslee controlled the environment by directing petitioner's wife to stop talking or she would have to leave.

Before law enforcement officials may question a suspect in custody, the officials must inform the suspect that he has a right to remain silent, that his statements may be used against him in court, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to questioning. Miranda v. Arizona, 384 U.S. 436, 479 (1966).

A defendant is in custody when "a reasonable person in such circumstances would conclude after brief questioning [that] he or she would not be free to leave." United States v. Hayden, 260 F.3d 1062, 1066 (9th Cir. 2001), cert. denied, 122 S. Ct. 1117 (2002). The determination is based on the totality of the circumstances. Factors to be considered in the analysis include "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." Id. Interrogation is "either express questioning or its functional equivalent'" and includes statements or actions "that the police should know are reasonably likely to elicit an incriminating response from the suspect." United States v. Wauneka, 770 F.2d 1434, 1438 (9th Cir. 1985) (quotations omitted). An officer's subjective, but undisclosed, view about whether the person being interrogated is a suspect is irrelevant to the analysis of whether the person is in custody. Stansbury v. California, 511 U.S. 318, 319 (1994).

Page 16 - OPINION AND ORDER

I find that the trial court correctly held that petitioner was not in custody until he was arrested. In similar cases where the individual is being questioned while receiving medical care, the Ninth Circuit suggested the following factors might turn medical treatment in a hospital into a custodial situation: the police transported the suspect to the hospital, monitored the suspect at the hospital, stayed outside the door, arranged an extended treatment schedule with the doctors, or otherwise intentionally delayed an arrest to avoid the need to give Miranda warnings. United States v. Martin, 781 F.2d 671, 673 (9th Cir. 1985).

Petitioner's transportation and stay at the hospital was not at the direction of the police, but rather was due to the need to treat petitioner's injuries. Similarly, he was taped to the stretcher in order to effectuate his treatment, not at the request of the police. Hospital personnel came in and out of the room freely. The only police officer in the room was Henslee, there were no officers posted outside the door to prevent petitioner from leaving, and Henslee quieted petitioner's wife only so that he could give petitioner the Miranda warnings, not to control the environment. As Martin noted, Miranda was worried about the "individual swept from familiar surroundings into police custody, surrounded by antagonistic forces, and subjected to . . . techniques of persuasion[.]" Martin, 781 F.2d at 673. Such is not the case here. Finally, Henslee's assertion that petitioner would not have been permitted to leave is irrelevant. Stansbury, 511 U.S. at 324 (subjective view of officer is not a factor).

The trial court's rejection of petitioner's argument that he was in custody is neither contrary to, nor an unreasonable application of, clearly established federal law.

    2.    <u>Whether the Statements Should Have Been Suppressed Once Petitioner Invoked His Right to Counsel</u>

Page 17 - OPINION AND ORDER

Petitioner invoked his right to counsel after Henslee requested consent to take blood and urine samples; petitioner argues any statements he made after that invocation were not voluntary. Petitioner contends Henslee's statement to him that Henslee was going to get a search warrant was a coercive tactic intended to get him to make incriminating statements.

The government must establish the voluntariness of petitioner's statements by a preponderance of the evidence. United States v. Kelley, 953 F.2d 562, 564 (9th Cir. 1992). When considering whether statements are voluntary, a court must consider the totality of the circumstances, including the characteristics of the accused and the details of the interrogation. Id. A statement is involuntary only if the police use coercive means to undermine the suspect's ability to exercise his free will. Henry v. Kernan, 197 F.3d 1021, 1026 (9th Cir. 1999), cert. denied, 528 U.S. 1198 (2000).

> The test of voluntariness is well established: "is the confession the product of an essentially free and unconstrained choice by its maker? . . . The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession."

Id. at 1026-27 (quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961)).

Overreaching includes lengthy questioning, deprivation of food or sleep, physical threats of harm, and psychological persuasion. Kelley, 953 F.2d at 565. When there is alleged psychological coercion, the issue is "whether the defendant's will was overborne" when he confessed. United States v. Miller, 984 F.2d 1028, 1031 (9th Cir.), cert. denied, 510 U.S. 894 (1993). Deception does not render a confession involuntary. Id.

Again, I find that the trial court correctly held that petitioner spoke voluntarily and was not interrogated after he invoked his right to counsel. Petitioner re-initiated further

Page 18 - OPINION AND ORDER

communication with Henslee by saying, "Can I ask a question?" and voluntarily launched into a summary of what happened.  An accused initiates conversation by making statements that "evince a willingness and a desire for a generalized discussion about the investigation[.]" Bradshaw, 462 US. at 1045-46.  Petitioner's statements fall in that category.

Petitioner takes issue with Henslee's statement that he would get a search warrant to take a sample of petitioner's blood.  By making that statement, however, Henslee was simply providing information to petitioner about what would happen next.  Pennsylvania v. Muniz, 496 U.S. 582, 604 (1990) (plurality opinion) (officer's explanation of "the legal consequences that would ensue should [defendant] refuse" to take the breathalyzer was not designed to prompt incriminating response).  Here, once petitioner refused consent, Henslee informed petitioner of the legal consequences of his refusal–Henslee would be getting a search warrant.  Viewing the totality of the circumstances, informing petitioner that a search warrant would be necessary to get a sample of his blood, in this context, does not rise to the level of a threat, improper influence or coercion, and was "not likely to be perceived as calling for any incriminating response."  Id. at 605.  Indeed, the evidence shows that before Henslee could even finish the statement about the search warrant, petitioner interrupted him to ask him a question, demonstrating how non-coercive the statement was.

This is not the end of the inquiry, however.  The next question is "whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." Bradshaw, 462 U.S. at 1046 (quoting Edwards, 451 U.S. at 486 n.9).

Page 19 - OPINION AND ORDER

Petitioner voluntarily, knowingly and intelligently waived his previously invoked right to counsel. Viewing the totality of the circumstances, petitioner had been arrested before and was familiar with the criminal justice system, he had been advised of his rights three times that night, the time between his invocation of his rights and reinitiating conversation with Henslee was very short and nothing occurred during that time that could have changed petitioner's understanding of his rights.

The trial court's conclusion that petitioner made voluntary statements and waived his right to counsel is neither contrary to, nor an unreasonable application of, clearly established federal law.

> 3.    Whether Any Error was Harmless

I note that even if the trial court erred, admission of the statements at trial was harmless. Petitioner admitted to driving the van at trial and admitted to being intoxicated. The only issue at trial was whether petitioner demonstrated extreme indifference to the value of human life. The trial court relied only on petitioner's behavior at the time of the accident in rendering his verdict: petitioner got drunk deliberately, he was highly intoxicated when he left the bar, drove the wrong way on a one-way street at a high rate of speed, and seriously injured and killed people in his own car and in the car he hit. Additionally, at sentencing, the trial court stated,

> And there's been a lot made of the Defendant's attitude at the hospital and obviously that's a factor the Court considers. I also have to consider the fact that at the hospital he was intoxicated and I guess people sometimes don't act, well many times don't act the way they otherwise would when they're intoxicated.

Trial Tr. vol. VI, 80, June 21, 2000. Thus, the trial court recognized that the statements petitioner made at the hospital might not be indicative of his character. Furthermore, the trial

court relied on the "gravity of the act and the tremendous loss" in imposing sentence.  Id. at 88.

Accordingly, I find any error the trial court made was harmless error.

        4.    <u>Conclusion</u>

In sum, the trial court's conclusion that petitioner made voluntary statements and waived

his right to counsel is neither contrary to, nor an unreasonable application of, clearly established

federal law.  Even if the trial court erred, it was harmless.  Accordingly, petitioner's claim that

the trial court erred in denying his motion to suppress (1.1) is denied.

## CONCLUSION

The petition for a writ habeas corpus (#1) is denied and this proceeding is dismissed with

prejudice.  Because petitioner has not made a substantial showing of the denial of a constitutional

right, a certificate of appealability is denied.  <u>See</u> 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

Dated this _____8th_____ day of March, 2010.


           _/s/ Garr M. King_____
           Garr M. King
           United States District Judge